UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                     CASE NO. 3:15cr60/MCR

GARY R. TOMEY, II,

      Defendant.
_____/

## ORDER

Gary R. Tomey, II ("Tomey") was convicted by a jury of one count of conspiracy to commit mail or wire fraud, in violation of 18 U.S.C. § 1349, and seven counts of mail fraud, in violation of 18 U.S.C. § 1341. *See* ECF No. 76, *United States v. Tomey*, No. 3:15-cr-60/MCR (N.D. Fla. May 26, 2016). The jury also found that Tomey committed these offenses in connection with telemarketing and that, in doing so, he victimized ten or more persons over the age of 55, in violation of 18 U.S.C. § 2326. *Id*. Tomey's co-defendant, Eric Eakes ("Eakes"), was acquitted of all charges.[1] At the close of the Government's case-in-chief, and again after the defense rested, Tomey orally moved for a Judgment of Acquittal

---

[1] Count One of the Indictment charged both Defendants with conspiring to commit mail and wire fraud by making false representations telephonically to solicit charitable contributions from prospective donors. Counts Two through Eight charged both Defendants with substantive counts of mail fraud.

under Rule 29 of the Federal Rules of Criminal Procedure, arguing that there was insufficient evidence to support a conviction on any of the charges. The court denied Tomey's motion with respect to Counts 2 through 8, but took the motion under advisement as to Count 1 and requested briefing from the parties, ECF No. 73, which they have now submitted, ECF Nos. 84 and 86. For the following reasons, the court finds that Tomey's motions for Judgment of Acquittal are due to be denied.

Tomey argues that the evidence presented at trial was insufficient for a jury to convict him of conspiracy to commit mail and wire fraud. More specifically, Tomey argues that the Government failed to prove: (1) that he and any other person "in some way or manner agreed to try to accomplish a common and unlawful plan to commit mail fraud," or (2) that any other person knew of and voluntarily participated in the alleged scheme to commit mail fraud. ECF No. 84 at 4. The Government responds that it introduced sufficient evidence from which the jury could infer that Tomey conspired with at least one other person to commit mail and wire fraud. ECF No. 86 at 3. Having presided over the trial and having carefully reviewed the record, pertinent law, and the parties' arguments, the court agrees.

Federal Rule of Criminal Procedure 29 directs the court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Rule also provides that the "court may reserve decision on the motion, proceed with the trial…, submit the case to the jury, and decide the motion…after [the jury] returns a verdict of guilty." Fed. R. Crim. P. 29(b). Where the court has reserved decision, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.* The legal standard, however, is the same, regardless of when the defendant makes his motion. *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979) ("The test…when a trial court rules on a motion for judgment of acquittal challenging the sufficiency of evidence applies to such motions whether made at the close of the Government's case, at the close of all the evidence, or after the return of a guilty verdict.").[2] The court is required to view the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor," *see United States v. Barsoum*, 763 F.3d 1321, 1329-30 (11th Cir. 2014) (internal marks omitted), and determine whether "*any* rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt," *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

---

[2] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Case No. 3:15cr60/MCR

The elements of conspiracy to commit mail or wire fraud are: (1) the existence of an agreement or common purpose to execute a scheme to defraud, and (2) use of the mail or wire systems to further the scheme. *United States v. Smith*, 934 F.2d 270, 274 (11th Cir. 1991). Although an agreement may be shown by direct evidence, "[t]he very nature of conspiracy frequently requires that [it] be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Toll*, 804 F.3d 1344, 1355 (11th Cir. 2015).

The court concludes that the Government presented sufficient evidence during its case-in-chief from which a rational jury could find that Tomey conspired with at least one other person, namely, co-defendant Eakes, to commit mail and wire fraud. The essence of the conspiracy charged is that, between August 2008 and May 2012, Tomey and others conspired to use deceptive and misleading telemarketing tactics to solicit charitable contributions under the pretext that the contributions would be used to furnish services for abused women and needy children. The Government presented evidence that the nerve center of the conspiracy was an office located in Milton, Florida, where Tomey employed numerous telemarketers. Several former employees testified that the telemarketers were paid minimum wage, plus a small commission on consummated "sales" (*i.e.*, gross receipts actually collected as a result of a

telemarketer's solicitations).  The Government's evidence showed that Eakes was the office administrator, having previously worked with and for Tomey in various for-profit telemarketing enterprises.  FBI Agent Joseph T. Kinard testified, based on statements made to him by Eakes during a prearrest interview, that Eakes trained the telemarketers on how to procure donations and supplied marketing scripts to guide them in responding to prospective donors' questions and concerns regarding the solicitations.  Eakes told Agent Kinard that he personally developed the marketing scripts and training materials using his own experience in the telemarketing industry, as well as from input and guidance from Tomey.  These scripts contained deceptive and misleading information, which Eakes knew at the time to be false.[3]  The Government's evidence showed that based on Eakes' training and the marketing scripts he provided, the telemarketers routinely made material misrepresentations to prospective donors about:  (1) the percentage of each contribution that would be used for charitable purposes; (2) the physical location of the charity and its beneficiaries; (3) and the employment status of the telephone solicitors.  Numerous victims throughout Alabama, Arkansas, Florida, Indiana, Mississippi, Ohio, and Tennessee were induced by these misleading and

---

[3] For example, Eakes told Agent Kinard that he "felt like it was perfectly okay to say that the employees were volunteers" because "sometimes the employees do come in and volunteer their own time to make calls."  In truth, Eakes admitted to Agent Kinard that he knew that all of the telemarketers were paid employees of Tomey's organization.

Case No. 3:15cr60/MCR

fraudulent representations to mail donations to Tomey's organizations.[4] From the Government's evidence, a reasonable jury could find, beyond a reasonable doubt, that Tomey and Eakes knowingly agreed to use deceptive and misleading telemarketing tactics to solicit charitable contributions and willfully participated in a scheme to do so. Therefore, Tomey's first motion for judgment of acquittal is due to be denied.

Nothing presented during the defendants' case-in-chief changes the court's view that a rational trier of fact could find evidentiary support for the conspiracy charge beyond a reasonable doubt. As a preliminary matter, the court rejects the notion that Tomey's conspiracy conviction should be vacated merely because the co-conspirator named in the indictment, Eakes, was acquitted of conspiracy.[5] It is well-established that the acquittal of a defendant's indicted co-conspirator does not necessarily indicate that the jury found that no conspiracy existed between the

---

[4] These organizations include: (1) Youth Achievement League, Inc. doing business as Children Services; (2) Children and Family Services Inc.; (3) Children's Charitable Services, Inc.; and (4) Mississippi Children Services, Inc.

[5] During its deliberations, the jury sent a communication to the court with the following question: "Can one defendant be found 'guilty' on Count One and one defendant found 'not guilty' on Count One?" *See* ECF No. 75 at 1. The court responded in the affirmative, but in an abundance of caution, instructed the jury that if they did "find one defendant guilty and the other not guilty, [they] must identify on the verdict form next to Count One for that defendant the person or persons with whom [they] have found the defendant conspired." *Id*. at 2. On closer review of the Eleventh Circuit case law on this issue, it is clear to the court that the jury was not required to "identify with particularity" the conspirators, as long as "the evidence was sufficient to show that [Tomey] conspired with someone." *See United States v. Martinez*, 96 F.3d 473, 477 (11th Cir. 1996). As explained more fully in the body of this Order, the court finds that there was sufficient evidence to show that Tomey conspired with at least two other persons—Eakes and Anthony DiLoreto—to commit mail and wire fraud.

Case No. 3:15cr60/MCR

two co-defendants. *United States v. Andrews*, 850 F.2d 1557, 1561 (11th Cir. 1988) (en banc) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."). Juries may reach inconsistent verdicts for a variety of reasons, including "mistake, compromise, or lenity." *United States v. Powell*, 469 U.S. 57, 65 (1984). Thus, in this case, the jury could have acquitted Eakes and still found that a conspiracy existed between him and Tomey. The apparent inconsistency of Tomey's conviction and Eakes' acquittal, standing alone, provides no basis for vacating Tomey's conspiracy conviction. *See United States v. Mitchell*, 146 F.3d 1338, 1344 (11th Cir. 1998) ("The Supreme Court has plainly determined that jury verdicts are insulated from review on the ground that they are inconsistent.") (internal marks omitted) *quoted in United States v. Albury*, 782 F.3d 1285, 1295 (11th Cir. 2015). Instead, the court must consider whether there was sufficient evidence of a conspiracy between Tomey and Eakes to sustain the conviction. *See United States v. Wright*, 63 F.3d 1067, 1074 (11th Cir. 1995). A review of the entire trial record reveals sufficient evidence of Eakes' knowing agreement with Tomey to use deceptive and misleading telemarketing tactics to solicit charitable contributions, and of Eakes' willful participation in a scheme to do so, for a reasonable factfinder to find that a conspiracy existed.

More specifically, the evidence showed that Eakes was responsible for staffing and managing the call center in Milton, FL, receiving and sorting mail, training telemarketers, monitoring sales calls, and tracking incoming donations. Eakes testified that he and Tomey developed the sales pitches together, by modifying the language from their former, for-profit telemarketing scripts to fit their new, ostensibly non-profit purpose. The evidence showed that the scripts contained deceptive and misleading information, which Eakes knew at the time to be false. For example, telemarketers were initially instructed to tell prospective donors that all fundraising for the charity was done by volunteers. Later, the script changed, and Eakes trained telemarketers to refer to themselves as "volunteer employees" or "members of the charity." In truth, Eakes knew that all of the telemarketers were paid employees of Tomey's organization. Eakes and Tomey also agreed that prospective donors would be told that "100%" of each donation "goes directly to the charity." This statement was technically true because donations went directly to Tomey's organizations, several of which had 501(c)(3) status under the Internal Revenue Code. However, the statement was also highly misleading, as evidenced by the numerous donors who testified that they understood from what they were told that 100% of each donation would be used for charitable purposes. The court will not engage in the semantic hair-splitting necessary to delineate a distinction between what the telemarketers were trained

to say—that "100%" of each donation goes "to the charity"—and what the donors apparently heard—that 100% goes "to charity."[6]  For legal purposes, it is a distinction without a difference because the law forbids material misrepresentations that are "reasonably calculated to deceive" another out of money or property.  *See United States v. Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003).  The court finds that the language from Eakes and Tomey's script was "reasonably calculated to deceive" prospective donors into believing that 100% of their contributions would be used to support charitable activities.  Both Tomey and Eakes testified that they knew people would be more likely to donate to a fundraiser who was calling directly from a charity, as opposed to a professional, third-party telemarketing agency.  A jury could reasonably conclude from this evidence that Eakes and Tomey knowingly agreed to use deceptive and misleading telemarketing tactics to solicit charitable contributions and willfully participated in a scheme to do so.

The court finds that a rational jury could also find that Tomey knowingly and willfully conspired with an unindicted coconspirator, Anthony DiLoreto, to commit mail and wire fraud.[7]  Anthony DiLoreto was an experienced,

---

[6] The court notes that a number of victims testified that, when they were solicited, the telemarketer explicitly stated that 100% of each donation would go directly to needy children or families in their state.

[7] The court has found sufficient evidence that Tomey and Eakes conspired to commit mail and wire fraud; therefore, on that basis alone, the jury's verdict should not be disturbed.

Case No. 3:15cr60/MCR

professional fundraising executive and Tomey's former colleague.  Tomey testified that Anthony DiLoreto gave him the idea to leave the for-profit telemarketing industry and form a non-profit fundraising organization of his own. In 2006, DiLoreto started such an organization in Indiana called Youth Achievement League Incorporated (YAL).  Both DiLoreto and Tomey served on YAL's Board of Directors and Tomey was YAL's registered agent in Florida.  In 2008, Tomey signed and filed papers with the Ohio Attorney General as Chief Financial Officer indicating that he and DiLoreto were the only persons at YAL with responsibility for the custody and distribution of contributions.  Tomey handled all of the accounting and bookkeeping for the "Florida chapter" of YAL. Also in 2008, Tomey decided to start his own non-profit fundraising organization modeled on YAL.  Initially, Tomey did not incorporate a separate legal entity. Instead, he simply registered and operated YAL under the fictitious name (*i.e.*, dba) Children Services of Indiana, Mississippi, and Ohio.  Tomey opened a checking account with Regions Bank as President of YAL dba Children Services and periodically transferred funds to DiLoreto's YAL accounts in Indiana.[8] DiLoreto told Tomey that he could charge expenses to the charity, such as hotel rooms, meals, and alcoholic beverages, if he was discussing charity matters and

---

However, the jury's verdict is also supported by sufficient evidence of a conspiracy between Tomey and DiLoreto, which the court finds appropriate to detail here.

[8] Tomey testified that these transfers occurred because, at least in the beginning, DiLoreto handled Tomey's payroll.

Case No. 3:15cr60/MCR

Tomey did so until he began drawing a salary in 2011. From this evidence, a reasonable jury could permissibly infer that as DiLoreto was Tomey's early partner and collaborator in non-profit fundraising, and that DiLoreto intentionally participated in, and shared the fruits of, Tomey's efforts to defraud charitable donors.

The evidence was also sufficient to show that DiLoreto knew about the fraudulent nature of Tomey's scheme and acted in furtherance of it. In 2009, Kim Anderson of the Mississippi Secretary of State's office began investigating consumer complaints about solicitations by Mississippi Children Services ("MCS") in Mississippi. Ms. Anderson testified that DiLoreto told her that MCS was a chapter of YAL with a physical office in Columbia, Mississippi that was run by Tomey. DiLoreto also said that YAL was covering all of MCS's administrative costs, so 100% of the funds raised in Mississippi were used for charitable services. In truth, MCS had no physical facility in Mississippi and only a very small percentage of each Mississippi donation was used for charitable purposes. DiLoreto's false statements to the Mississippi Secretary of State in 2009 about Tomey's operation in Mississippi, which are similar to misrepresentations made by Tomey's employees to prospective donors, support a conclusion that DiLoreto was fully aware of and willfully joined in Tomey's fraudulent scheme. Taken as a whole, the evidence was sufficient to permit a

reasonable jury to find that Tomey and DiLoreto conspired to commit mail and wire fraud.

There is no direct evidence in this case of an explicit agreement between Tomey and any other person to use deceptive and misleading telemarketing tactics to solicit charitable contributions. A conspiracy may be inferred, however, from surrounding circumstantial evidence. *Toll*, 804 F.3d at 1355 (11th Cir. 2015). Ultimately, the determination of the strength of the evidence and the credibility of the witnesses is the task of the jury. *See Hollifield*, 870 F.2d at 578; *Corley*, 824 F.2d at 937; *Browning*, 723 F.2d at 1546. The court concludes that a rational jury could find from the circumstantial evidence presented at trial that a conspiracy to commit mail and wire fraud existed and that Tomey, Eakes, and DiLoreto knew about and willfully participated in it. Therefore, Tomey's motions for Judgment of Acquittal are due to be denied.

Accordingly, it is **ORDERED** that Tomey's Motion for Judgment of Acquittal, ECF No. 84, is **DENIED**.

**SO ORDERED** on this 28th day of November, 2016.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**